```
                UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MASSACHUSETTS


ESPEDITO REALTY, LLC,     )
          Plaintiff       )
                          )
          v.              ) C.A. NO. 10-cv-30039-MAP
                          )
NATIONAL FIRE INSURANCE   )
COMPANY OF HARTFORD,      )
          Defendant       )
```

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
DEFENDANT'S MOTION TO AMEND,
AND PLAINTIFF'S MOTION TO STRIKE
(Dkt. Nos. 29, 27, & 38)

March 26, 2012

**PONSOR, U.S.D.J.**

## I. INTRODUCTION

In Ernest Hemingway's novel For Whom the Bell Tolls, the protagonist Robert Jordan experiences a movement of the earth.[1] This case looks at the same phenomenon from an insurance perspective.

Plaintiff, the owner of a warehouse, sued its insurer for breach of contract and violation of Mass. Gen. Laws ch. 93A for failing to pay for damage to its warehouse floors. Defendant insurer moved for summary judgment (Dkt. No. 29)

---

[1] Ernest Hemingway, For Whom The Bell Tolls, 158 et seq. (Scribner Paperback Fiction Edition, Simon & Shuster 1995) (1940).

1

claiming that the damage to the warehouse floors was caused by "earth movement" -- an excluded peril under the policy -- and for fraud on the part of Plaintiff.

Defendant also moved to amend its answer to list fraud as a defense. (Dkt. No. 27.)  Plaintiff opposed the motion to amend and moved to strike Defendant's reply in support of the motion to amend. (Dkt. No. 38.)

For the reasons stated below, Defendant's Motion for Summary Judgment will be denied as to its argument based on the "earth movement" exclusion and denied without prejudice as to its argument based on fraud.  Defendant's Motion to Amend Its Answer will be allowed, and Plaintiff's Motion to Strike Defendant's Reply will be denied.

## II. FACTS

As Rule 56 requires, the facts are viewed in the light most favorable to the non-moving party, here Plaintiff.  In any event, the pertinent facts are largely undisputed.

Defendant insurance company, National Fire Insurance Company of Hartford ("National Fire"), issued a business owner's insurance policy to Plaintiff, Espedito Realty, LLC ("Espedito").  While coverage was in effect, a ceiling pipe located between the first and second floor office spaces burst at Plaintiff's warehouse in Springfield, Massachusetts.  The break was not noticed for several days, and

water from the pipe pooled against the north wall of the warehouse, eventually seeping down between the concrete floor and the exterior wall. As a result, the sub-base below the concrete floor subsided, and the warehouse floor sank.

Defendant paid $27,816.39 for the damage to the walls and the ceiling, as well as for lost rent (discussed below). However, it refused to pay $144,000 claimed for repair to the sunken floor, taking the position that the floor sank because of "earth movement" underneath the floor and thus was not covered under the policy. This lawsuit seeks damages to compensate for the sunken floor.

The "earth movement" exclusion limits the insurer's obligation to cover damages arising from earthquake, landslide, mine subsidence, and volcanic eruption. (Dkt No. 31, Ex. A, Policy at Section B (Exclusions), ¶¶ 1b(1), (2), (3), and (5), at 4.) Critically, the exclusion also extends to "[e]arth sinking (other than sinkhole collapse), rising or shifting, including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface." Id. at ¶ 1b(4).

Some disagreement exists among the opinions of Defendant's and Plaintiff's experts as to the exact process that caused Plaintiff's damages. For Rule 56 purposes the court will of course accept Plaintiff's position.

According to Plaintiff's experts, water from the broken pipe eventually penetrated to the ground under the floor, resulting in a subsidence or washing away of soil that caused the floor to sink. Plaintiff's first expert concluded that,"[i]t is assumed the underlying soils became washed out over a very short period of time and the existing floor slab, unsupported, settled." (Dkt. No. 31, Ex. J.) Another expert hired later by Plaintiff agreed, saying,

> [w]ater flowing through the sand sub-base . . . created voids between the bottom of the concrete slab and the underlying sand sub-base. The concrete floor slab cracked and settled to the newly compacted sand sub-base level.

(Id.)

Defendant's first argument in favor of summary judgment is that, accepting the testimony of Plaintiff's experts, the policy's "earth movement" exclusion deprives Plaintiff of coverage. Defendant contends that once the earth "moves," whatever the cause, the analysis is over, and Defendant is entitled to judgment.[2]

---

[2] The policy does cover damages caused by fire or explosion even when earth movement occurs as a result. (Dkt.

4

As the investigation of the claim unfolded, Defendant contends that it uncovered new facts supporting its second ground for summary judgment, fraud on the part of Plaintiff.

In particular, Defendant's investigation revealed discrepancies in the claim filed by Plaintiff relating to business interruption from space it was leasing to a tenant called Horizon Sheet Metal. In an email dated August 26, 2009, Plaintiff's agent wrote about the loss of Horizon as a tenant:

> The name of the owner of Horizon is Art Grodd . . . . The company has their contents at the insured location, but they are not working out of there, nor are they paying any rent. They are waiting to hear when they can resume back in building. They are going to start looking for another location if they can not resume their operations soon. They have not paid rent since the loss and do not intend to until such a time as they can work in the building.

(Dkt. No. 31, Ex. V.)

In follow-up communications, Plaintiff submitted a lease to Defendant showing Horizon's rent to be $4,100 per month. Once it received the documentation, Defendant paid Plaintiff $16,400 to cover the loss of Horizon as a tenant for four months.

However, based on information it has recently obtained, Defendant contends that the information Plaintiff's agent

---

No. 31, Ex. A, at ¶ 1b(4).)

submitted about Horizon was untrue.  Defendant contends that the record demonstrates that Horizon never left the building, and its rent was not $4,100 per month.  At the time of the loss, Horizon was paying -- at most -- around $3,000 per month. (Dkt. No. 31, Exs. Y & Z.)  Furthermore, Horizon had terminated its lease months earlier and, at the time of the loss, was only a month-to-month tenant. (Dkt. No. 31, Ex. Y.)

Defendant first noticed a discrepancy in the claim after a deposition of Frank Daniele, Espedito's owner.  In his deposition, Daniele admitted that Horizon had never left but had only chosen to use less space.  (Dkt. No. 31, Ex. W., Dep. of Frank Daniele 33:10.)  Later, in a deposition taken of Horizon's president, the company said it reduced its operations in Springfield -- and its need for space -- because the recession had forced it to lay staff off.  The water damage to its space had nothing to do with its decision. (Dkt. No. 31, Ex. X, Deposition of Gerard Desjardins 25:1-24.)  Finally, in contrast to what Plaintiff's agent told Defendant when she submitted Plaintiff's claim, documents showed that Horizon's lease was terminated as of January 2009 -- three months before the water damage to Espedito's property occurred. (Dkt. No. 31, Ex. Y.)

Plaintiff has not responded to these allegations because, as noted above, it claims that Defendant did not properly raise fraud as a defense in its answer. Plaintiff has asked for an opportunity to conduct discovery, if the court permits Defendant to assert the fraud defense.

### III. DISCUSSION

#### A. Earth Movement Exclusion

It is well established that the question whether an insurance claim is covered or excluded by a policy is to be resolved by the court. B & T Masonry Constr. Co., Inc. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 38 (1st Cir. 2004). Additionally:

> When interpreting an insurance contract, we 'consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.' Unambiguous terms are construed in their usual and ordinary sense. 'Ambiguous words or provisions are to be resolved against the insurer.'

McGregor v. Allamerica Ins. Co., 449 Mass. 400 (2007) (internal citations omitted).

Exclusions from coverage are to be strictly construed, and the insurer bears the burden of proving their applicability. Any ambiguity in the exclusions must be construed against the insurer. Hingham Mut. Fire Ins. Co. v. Niagara Fire Ins. Co., 46 Mass.App.Ct. 500, 504 (1999).

Defendant's argument is straightforward: the water from

the burst pipe caused the earth to (in some sense) "move," which caused the floor to sink; ipso facto, coverage for the damage is excluded. The resolution of the issue is not that simple.

As Plaintiff points out, although no Massachusetts case appears to be directly on point, numerous courts outside this jurisdiction addressing similar fact patterns and similar contract language have found coverage.

The recent decision of the Nevada Supreme Court in Powell v. Liberty Mut. Fire Ins. Co., 252 P.3d 668 (Nev. 2011), is particularly helpful. The homeowner in that case, whose policy excluded losses arising from "earth sinking, rising or shifting," id. at 670, suffered damage to her house when, as here, a water pipe burst and flooded the sub-basement. The court concluded that

> not only is the earth movement exclusion ambiguous . . . but also, if [the insurer] had intended for the earth movement exclusion to exclude damage caused by soil movement from a ruptured pipe, then it would have had to clearly include that in the earth movement definition and shown that the earth movement exclusion unmistakably applied to the damage here.

Id. at 672.

The Powell court noted that earth movement exclusions "were historically included in insurance policies to protect insurance companies from having to pay out on policies when

a catastrophic event caused damage to numerous policyholders." Id. (citing Peters Tp. Sch. Dist. v. Hartford Acc. & Indem., 833 F.2d 32, 35-36 (3rd Cir. 1987); Wyatt v. Nw. Mut. Ins. Co. of Seattle, 304 F. Supp. 781, 783 (D. Minn. 1969)). Applying the exclusion to the all-too-common domestic nuisance of a burst water pipe, the court found, pulled the policy provision from its historical roots and its intended sphere.

The Powell decision has particularly useful application to the case now before this court, because that decision addressed the impact of an "anti-concurrent" clause, similar to one in this case, which barred coverage even where the loss was caused only in part by earth movement and in part by other factors. The Nevada court held that clarity was "especially important" in light of the anti-concurrent clause, because these clauses "are often broad and used to deny coverage in numerous different instances." Id. at 674. The court concluded that if the insurer "had wished to exclude damage sustained as a result of soil movement from a burst pipe under its earth movement exclusion, it should have drafted a more explicit exclusion." Id. Based on this holding, the Nevada Supreme Court reversed the trial court's ruling granting summary judgment for the defendant insurer.

The Powell decision grew out of a considerable line of

cases expressing skepticism about the application of the "earth movement" exclusion in cases where the movement and resulting loss did not arise from "natural" causes.

In <u>Steele v. Statesman Ins. Co.</u>, 607 A.2d 742, 742-43 (Pa. 1992), for example, the insured house -- covered by an all-risk policy with an exclusion for loss caused by "earth, sinking, rising or shifting" -- was damaged when a nearby hillside collapsed after being overbuilt by a neighbor. <u>Id.</u> at 192.  In reviewing the policy language, the Pennsylvania Supreme Court found that "a reasonable insured could conclude that exclusion is applicable to earth movement due to natural events only." <u>Id.</u> at 743.  Since the damage to the hillside was caused by man-made construction, the court held that the homeowner's loss was not excluded and he was entitled to coverage under the policy.

<u>Steele</u> was consistent with earlier authority including <u>Peters Tp. School Dist. v. Hartford Acc. & Indem.</u>, which similarly found that an "earth movement" exclusion covered losses "brought about by spontaneous, natural events but not . . . [those] brought about by man-made causes . . . ."  833 F.2d at 33; <u>see also</u> <u>Fayad v. Clarendon Nat. Ins. Co.</u>, 899 So.2d 1082, 1088 (Fla. 2005) (exclusion applies only to natural causes)

The "natural" versus "man-made" distinction is not

airtight, since policy language often refers to events that partake of either or both qualities. Thus, earthquakes and volcanos may be considered "natural," while mine subsidence may be considered "man-made."

The Alaska Supreme Court refined the distinction between natural and man-made causes in West v. Umialik Ins. Co., 8 P.3d 1135 (Alaska 2000), another case involving damage from a burst pipe. Reversing the lower court's entry of judgment for the insurer based, in part, on the "earth movement" exclusion, the Alaska Supreme Court found that, because "the insurance policy exclusions relating to settling, earth movement, and water damages can reasonably be interpreted to be limited to naturally occurring phenomena or perils external to the insured property," the exclusions did not bar coverage. Id. at 1144 (emphasis added).

Defendant protests that Powell and the numerous other decisions on the "earth movement" exclusion that favor Plaintiff here are distinguishable, because of the more detailed language contained in National Fire's exclusion. A reading of this additional verbiage from the viewpoint of an "objectively reasonable insured," however, only compounds confusion. With regard to the impact of water -- the force most relevant to the case at hand -- the exclusion limits

itself to "the action of water <u>under the ground surface</u>." (Dkt No. 31, Ex. A, § B (Exclusions), ¶ 1b(4) at 4 (emphasis added.)  It is very difficult to see how a reasonable insured could read this language to apply to water coming down from a burst pipe on the second floor and seeping down into the ground from above.

Although perhaps not directly on point, some authority from this district supports Plaintiff's position and suggests that the loss here should be covered.  Recently, in <u>Mulhern v. Philadelphia Indemn. Ins. Co.</u>, No. 10-10125, 2011 WL 3563126, at #6 (D. Mass. Aug. 15, 2011), Judge Stearns addressed a situation where a building suffered structural damage allegedly resulting from the excessive use of pile drivers on a neighbor's construction site.  Defendant, invoking the "earth movement" exclusion, sought summary judgment, and Judge Stearns denied the motion on the ground that a disputed issue of fact existed as to "whether 'improperly compacted soil' was the cause of the damage or whether vibrations emanating from the pile driving were the exclusive cause."  <u>Id.</u>  Since the pile driving, if it was the cause of the damage, must have moved the earth at least to some extent, and since the policy at issue (like the one in this case) contained both the "earth movement" exclusion and an "anti-concurrent" clause, <u>Mulhearn</u> supports the

proposition that "earth movement" of any kind is not <u>ipso facto</u> sufficient to bar coverage in these circumstances.

In an earlier decision from this district, <u>Boston Co. Real Estate Counsel, Inc. v. Home Ins. Co., Inc.</u>, 887 F. Supp. 369 (D. Mass. 1995), Judge Saris addressed the issue of damages arising from foundational settlement. She allowed summary judgment based on an exclusion covering "settlement," but denied the motion insofar as it relied on the "earth movement" exclusion, finding that "[m]ost courts have confined the meaning of 'earth movement' to its commonplace usage -- referring only to sudden, cataclysmic events (e.g. earthquakes)." <u>Id.</u> at 374 (internal citations omitted). Judge Saris' memorandum recognized some contrary authority but concluded that

> [e]ven this more expansive interpretation of earth movement clauses is not broad enough to encompass the damage to Boston Company's building as it was neither sudden nor caused by non-natural [sic] forces.

<u>Id.</u>[3]

It is true that some non-binding authority appears to support the strict rule that Defendant argues for, excluding coverage whenever "earth movement" is involved in the loss in any way. <u>See, e.g.</u>, <u>Alamia v. Nationwide Mut. Fire Ins.</u>

---

[3] It seems likely, given the context, that the word "natural" was intended in this sentence.

13

Co., 495 F. Supp. 2d 362, 378 (S.D.N.Y. 2007) (citing cases in support of this position). Even these cases, however, generally involve water flowing underground and damage occurring over a period of time.

Accepting authorities like Alamia as essentially on all fours with this case, the court simply finds them unpersuasive; the considerable contrary authority is much more convincing. The unavoidable fact is that pipes burst rather frequently. It is a rare property owner who has not dealt with the problem, or at least suffered anxiety over the possibility, and it is hardly intuitive that an "earth movement" exclusion would bar coverage for the homely situation where a pipe bursts and a floor sinks as a result. No objectively reasonable insured reading the policy would think so, especially when the only reference to the impact of water is to "water flowing underground." If the policy truly intended to cover this commonly recurring situation, it should have said so.

Based on the above, the court will deny Defendant's motion for summary judgment based on the "earth movement" exclusion.

  B. Fraud.

Defendant also claims that it should be granted summary judgment on the ground that Plaintiff committed fraud.

14

Plaintiff's policy included business interruption insurance, and Espedito made a claim for the lost rent of a tenant called Horizon Sheet Metal.  Plaintiff, through its agent, told Defendant that Horizon had to leave its premises because it was no longer able to use the space. (Dkt. No. 31, Ex. V.)  Defendant paid Plaintiff's claim, but it later found evidence that Defendant's representatives were not, in its view, truthful.

Defendant did not list fraud as a defense in its original answer and now asks for leave to amend to add fraud as a defense (Dkt. No. 27).  Defendant took Daniele's deposition -- when, it says, it learned of the alleged fraud -- on March 22, 2011 (Dkt. No. 31, Ex. W), and filed its Motion to Amend on June 10, 2011, a little under three months later.

Plaintiff has opposed the motion to amend and moved to strike Defendant's reply (Dkt. No. 38), pointing out that it was filed without the leave of the court.  In the alternative, Plaintiff asks for time to conduct additional discovery surrounding the fraud issue.

It is axiomatic that a court "should freely give" leave to amend "when justice so requires."  Fed. R. Civ. P. 15; see also Forman v. Davis, 371 U.S. 178, 182 (1962).  The record contains no evidence of unfair prejudice to Plaintiff

arising from allowance of Defendant's motion.  Without any "apparent or declared reason," Forman, 371 U.S. at 182, to deny it, the court will allow Defendant's Motion to Amend its Answer.  Plaintiff's Motion to Strike will be denied.

To balance fairness to both sides, Plaintiff is entitled to a reasonable period of discovery to explore evidence to oppose Defendant's fraud-based argument.  Defendant's Motion for Summary Judgment, insofar as it is based on a claim of fraud, will therefore be denied without prejudice.  Plaintiff will have until June 30, 2012 to conduct discovery solely related to this issue.  Defendant may submit a renewed motion for summary judgment on or before July 31, 2012, or the parties may report by that date that they are prepared for the scheduling of a final pretrial conference in preparation for trial.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. No. 29) is hereby DENIED to the extent that it relies on the "earth movement" exclusion and DENIED WITHOUT PREJUDICE to the extent that it relies on allegations of fraud.  Plaintiff will have until June 30, 2012 to conduct discovery on the fraud issue, and Defendant may file a renewed motion for summary judgment by July 31, 2012.  Alternatively, if counsel agree that the case is not

**appropriate for summary judgement, they may request the court to schedule a final pretrial conference in preparation for trial. Defendant's Motion to Amend (Dkt No. 27) is hereby ALLOWED, and Plaintiff's Motion to Strike (Dkt. No. 38) is hereby DENIED.**

    **It is So Ordered.**

                              <u>/s/ Michael A. Ponsor</u>
                              **MICHAEL A. PONSOR**
                              **U. S. District Judge**