UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


ESPEDITO REALTY, LLC,            )
              Plaintiff          )
                                 )
              v.                 ) C.A. NO. 10-cv-30039-MAP
                                 )
NATIONAL FIRE INSURANCE          )
COMPANY OF HARTFORD,             )
              Defendant          )


MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
FOR BREACH OF THE POLICY CONDITION
PROHIBITING MISREPRESENTATION
(Dkt. No. 43)

March 29, 2013

PONSOR, U.S.D.J.

I. INTRODUCTION

Plaintiff has sued Defendant insurer for breach of contract and violation of Mass. Gen. Laws Ch. 93A, for failing to cover losses caused by water damage to its warehouse.  Defendant moved for summary judgment (Dkt. No. 29) arguing that (1) the damage to the warehouse floors was caused by "earth movement," an excluded peril under the policy, and (2) any claim for coverage was barred based on Plaintiff's material misrepresentations.  The court denied Defendant's motion as to the "earth movement" exclusion

outright.  Espedito Realty v. Nat'l Fire Ins. Co. of
Hartford, 849 F. Supp. 2d 179, 181-83 (D. Mass. 2012).  It
denied without prejudice, however, the portion of the motion
based on misrepresentation, permitting Defendant to file a
renewed motion for summary judgment following additional
discovery.

Now before the court is Defendant's renewed motion for
summary judgment (Dkt. No. 43) arguing that the entire
insurance policy is void because of Plaintiff's
misrepresentations.  For the reasons stated below, this
renewed motion will be allowed.

## II.  FACTS

As Rule 56 requires, the facts and all reasonable
inferences that might be drawn from them are viewed in the
light most favorable to the non-moving party, here
Plaintiff.  Pac. Ins. Co., Ltd. v. Eaton Vance Mgmt., 369
F.3d 584, 588 (1st Cir. 2004).  The court has already laid
out the basic underlying facts in its earlier memorandum and
order, cited above.  The facts related to Defendant's
renewed motion, anchored on its contention that the policy
is void because of Plaintiff's material misrepresentations,
are as follows.

Plaintiff Espedito Realty, LLC, owned by Frank Daniele,
possessed a warehouse located at 49 Cadwell Drive in

2

Springfield, Massachusetts.  In March 2008, Plaintiff
purchased through FSC Insurance Agency ("FSC") an insurance
policy issued by Defendant National Fire Insurance Company
of Hartford, an affiliate of CNA Insurance Company, to cover
losses resulting from damage to the warehouse.  The policy
issued by Defendant to Plaintiff contained a condition that
voided the policy in the event that the insured
intentionally concealed or misrepresented a material fact
concerning a claim made under the policy.[1]  (Def.'s Second
Am. Answer, Dkt. No. 27, Ex. 1 at 8.)  Plaintiff used an FSC
agent (hereinafter the "Agent") to broker this policy with
Defendant.

Beginning in January 2007, Plaintiff rented space in
its warehouse to the company Horizon Sheet Metal, Inc.
("Horizon").  Horizon used part of the first floor for its
office and welding operation.  By the terms of the lease
signed between Plaintiff and Horizon, the monthly amount of

---

[1] The full text of the policy provision is as follows:
This policy is void in any case of fraud by you as it
relates to this policy at any time.  It is also void if
you or any other insured, at any time, intentionally
conceal or misrepresent a material fact concerning:
a.   This policy;
b.   The Covered Property;
c.   Your interest in the Covered Property; or
d.   A claim under this policy.
(Dkt. No. 31, Ex. 1 at 31.)

rent due for the lease period between January 2007 and December 2007 was to be $3,166.66; the monthly amount due between January 2008 and December 2008 was to be $3,333.33; and the monthly payment between January 2009 and April 2010 was to be $3,416.66.  (Dkt. No. 44, Ex. 1 at 157.)  This lease was signed on February 6, 2007, by Mr. Daniele and the president of Horizon, Arthur Grodd.  (<u>Id.</u> at 166.)

A little over seven months later, on September 28, 2007, Mr. Daniele and Mr. Grodd signed a lease modification, which increased the rent to $3500 for the period between October 2007 and December 2007; $4000 for the period between January 2008 and December 2008; and $4100 for the period between January 2009 and December 2009.  (<u>Id.</u> at 156.)

The evidence in the record shows that Horizon paid the $4000 a month rent due under the modification for January through May of 2008.  (<u>Id.</u> at 218-19.)  From June until November 2008, Horizon paid only $2500 a month.  (<u>Id.</u> at 219-20.)  On November 4, 2008, Horizon sent Plaintiff a letter declaring Horizon's intention to terminate the lease and to surrender the leased property to Plaintiff on January 2, 2009.  (<u>Id.</u> at 137.)  Nonetheless, Horizon stayed on as a tenant at will.  In December 2008, Horizon began paying $3000 a month in rent, which it continued to pay through the

4

first part of 2009.

On March 6, 2009, the water pipes in the warehouse broke, causing extensive damage to the building and to some of the property located in the building.  The water damage was not discovered until March 9, 2009, by which time the water on the first floor had pooled several inches deep.  Horizon moved its offices upstairs after the water break, kept its welding work in the open warehouse space, and for two months continued to pay $3000 per month.  Beginning in June 2009, Horizon moved out of the office space upstairs and dropped its rental payment to $2000 because of the water damage in the building.  Horizon thereafter remained as a tenant at will paying $2000 per month for a year.  In July 2010, it agreed to pay an increased rent of $2300 per month.

The claims made by Plaintiff under its insurance policy with Defendant were made through the FSC Agent.  On March 11, 2009, the Agent reported the damage to Defendant on a property loss form.  The initial loss reports were limited to the damage done to the walls and ceiling of the building.  Defendant made two payments, in May and August of 2009, totaling over $10,000 to Plaintiff for those repairs.  The parties' dispute over the buckling of the concrete floor and

the "earth movement" exclusion began in June 2009.[2]

On July 29, 2009, the Agent sent an email to Defendant, copied to Plaintiff's owner, Mr. Daniele, inquiring into Plaintiff's claim for the damaged floor.  In this communication the Agent stated that Plaintiff was "now losing rental income as a result" of the loss from the water break.  (Dkt. No. 44, Ex. 1 at 147.)  The Agent sent another email, again copied to Mr. Daniele, on August 5, 2009, reiterating the claim for lost rental income.  On August 13, 2009, the Agent sent an email to Mr. Daniele asking for information on the rental income he was "losing as a result of the loss due to the tenant having to leave." (Id. at 151.)  Later that same day, the Agent sent an email to Defendant falsely stating that the damages to Plaintiff included $4,150 per month in lost rent from the date of the water break due to the tenant leaving the premises after the incident.  (Dkt. No. 44, Ex. 1 at 153.)  On August 18, 2009, the Agent sent an email to Defendant with the paperwork needed to support Plaintiff's business income loss claim, misleadingly including only a copy of the September 2007 lease modification and the February 2007 original lease, but

---

[2] This dispute, the genesis of this lawsuit, is discussed in the court's earlier order.  Espedito Realty, 849 F. Supp. 2d at 181-83.

not the tenant's letter of November 2008 terminating the
lease.

On August 21, 2009, the Agent responded to an email
from John C. Taylor, Senior Client Services Manager for
Defendant, in which Mr. Taylor summarized Plaintiff's claims
as of that time.  The second issue noted was Plaintiff's
"$4000+" claim per month for lost rental income.  (Dkt. No.
44, Ex. 1 at 44.)  On August 26, 2009, the Agent sent
another email to Defendant, stating that Horizon maintained
some property in the warehouse but falsely claiming that
Horizon had moved operations and was not paying rent.  (Id.
at 172.)  On August 28, 2009, Defendant sent a check to
Plaintiff for $16,400 as a "loss of rent advance payment."
(Id., Ex. 2 at 20.)  Defendant told Plaintiff that an
accounting firm would contact Plaintiff later to calculate
the exact amount of rental income loss.

In his deposition, Mr. Daniele stated that FSC
Insurance was Plaintiff's agent and that he provided the
Horizon lease and other documents to the FSC Agent to
support his claim with Defendant.  (Id. at 180-81.)  Mr.
Daniele also stated that in fact he knew that Horizon had
never left the warehouse after the flood though it did
reduce the amount of space it was using.  (Id. at 183-84.)
Moreover, Mr. Daniele admitted that though its rental

payments decreased after a period, Horizon never stopped
paying some amount of rent.  (Id. at 185.)

### III. DISCUSSION

The court should grant summary judgment for the moving
party where there is no genuine issue as to a material fact
and the moving party is entitled to judgment as a matter of
law.  Fed. R. Civ. P. 56.  "A 'genuine' issue is one that
could be resolved in favor of either party, and a 'material
fact' is one that has the potential to affect the outcome of
the case."  Massachusetts Mut. Life Ins. Co. v. Fraidowitz,
360 F. Supp. 2d 243, 246 (D. Mass. 2005).

A.  Legal Standards

By its terms, the insurance policy issued by Defendant
to Plaintiff is void if the insured intentionally conceals
or misrepresents a material fact concerning a claim under
the policy.  (Dkt. No. 27, Def.'s Second Am. Answer, Ex. 1
at 8.)  Such clauses are enforceable in Massachusetts.
Boston Mut. Ins. Co. v. New York Islanders Hockey Club,
L.P., 165 F.3d 93, 96 (1st 1999); Yerardi v. Pac. Indem.
Co., 436 F. Supp. 2d 223 (D. Mass. 2006); Gechijian v.
Richmond Ins. Co., 305 Mass. 132, 136 (1940) ("Gechijian
II").  For the insurance policy to be voided, the insurance
company must establish three things: (1) that a
misrepresentation exists, (2) that it was material, and (3)

8

that the insured acted intentionally in misrepresenting the material fact in the claim presented to the insurance company. <u>Yerardi</u>, 436 F. Supp. 2d at 240. The burden of establishing these elements rests with the insurance company. <u>See</u> <u>Dadurian v. Underwriters at Lloyd's, London</u>, 787 F.2d 756, 762 (1st Cir. 1986); <u>Gechijian II</u>, 305 Mass. at 136. Summary judgment in favor of an insurer offering the misrepresentation defense, though rare, may be appropriate where the evidence is clear.

On the first issue, whether a particular statement constituted a misrepresentation, jury consideration may be required. At trial, the insurer must persuade the jury that particular representations were, in fact, false and not merely ambiguous or unclear. In the summary judgment context, the insurer must convince the court that the undisputed facts permit only one conclusion: that the statements at issue were misrepresentations. <u>Massachusetts Mut. Life Ins. Co.</u>, 360 F. Supp. 2d at 246-47 (concluding that the insured's answer to a question on the application was false as a matter of law).

Resolution of the second issue, materiality, may again depend on the existence of disputed facts. It is well established that "'if the facts misrepresented are so obviously important that reasonable minds cannot differ on

the question of materiality,' then the issue becomes one of law for the judge." <u>Yerardi</u>, 436 F. Supp. 2d at 240 (internal citation and quotation omitted).  To be considered material, the misrepresentation need not be central to the insurance claim, or even be relied on by the insurance company.  It is enough that the misrepresentation was "relevant to the insurance company's investigation of a claim." <u>Dadurian</u>, 787 F.2d at 759-60.

On the third and last element, the insurer must show that the misrepresentation was made with fraudulent intent. <u>Gechijian II</u>, 305 Mass. at 138.  Even when it is clear that a misrepresentation was material, disputed facts regarding an insured's intent may make summary judgment inappropriate. "An innocent mistake or an accidental misrepresentation will not deprive the insured of the benefits of the policies." <u>Id.</u>  In Massachusetts, intent to deceive is not presumed; it must be proven. <u>Rappe v. Metro. Life Ins. Co.</u>, 322 Mass. 438, 440 (1948).  However, "fraudulent intent may be shown by proof that a party knowingly made a false statement and that the subject of that statement was susceptible of actual knowledge." <u>Fisch v. Bd. of Registration in Med.</u>, 437 Mass. 128, 139 (2002).  The insurance company does not need to show that the insured intended to defraud the company out of more than the actual loss; the policy will be voided if the

insured intentionally furnished false information to the insurance company if only for the purpose of gaining a more advantageous position in settling the claim.  <u>Gechijian v. Richmond Ins. Co.</u>, 298 Mass. 487, 488-89 (1937) ("<u>Gechijian I</u>"); <u>Gechijian II</u>, 305 Mass. at 136 (stating that providing the insurance company with information that the insured knew to be false "is a fraudulent design which constitutes an attempt to defraud within the provisions of the standard policies and vitiates such contracts of insurance even though the insured may not have intended to secure more than his actual loss").

In weighing whether the misrepresentation defense bars coverage, courts are obliged to bear in mind that the misrepresentations of an insured's agent are attributable to the insured.  "It is well settled in Massachusetts that an agent's attempt to defraud is attributable to his principal, if the agent is acting with the scope of his authority." <u>Harold J. Warren, Inc. v. Federal Mut. Ins. Co.</u>, 386 F.2d 579, 582 (1967); <u>Bockser v. Dorchester Mut. Fire Ins. Co.</u>, 327 Mass. 473 (1951).  Any other rule would facilitate the circumvention of policy provisions by permitting the insured to completely delegate the claims process to "a third party whose acts might be disavowed."  <u>See</u> <u>Bockser</u>, 327 Mass. at

11

479.

B.  Analysis

The record contains almost no dispute as to actual
facts.[3]  As will be seen, it cannot, on the record before
the court, fairly be disputed that Plaintiff's agent made
misrepresentations, or that these misrepresentations related
to material facts.  Plaintiff's main line of defense rests
on the third element.  Plaintiff contends that the question
of whether the material misrepresentations were intentional
requires jury consideration.  The argument is resourceful
but unpersuasive.

To start with the first element, there can be no doubt
that several misrepresentations were made to Defendant
regarding the status of Horizon as Plaintiff's tenant.  The
Agent told Defendant that Plaintiff's tenant, Horizon, had
vacated the warehouse and was no longer paying rent after
the damage from the water.  This was flatly false.  The
Agent also falsely told Defendant that the monthly rent had

---

[3] Plaintiff argues that the court cannot rely on the
statements in the emails between Defendant and the Agent
because Defendant has not authenticated the emails, and many
of the statements constitute hearsay.  This argument lacks
force for two reasons.  First, the emails fall within the
business records exception.  Fed. R. Evid. 803(6)(B).
Second, the emails are not offered to prove the truth of the
matters asserted in them, but only to show that the
communications occurred.  Indeed, Defendant contends that
the emails were in fact untrue.

been around $4100 per month.  In support of this assertion,
the Agent sent copies of the original lease and the
amendment, which he obtained from Plaintiff.  Significantly,
however, the Agent failed to disclose Horizon's November 4,
2008, letter of recision.  As Mr. Daniele acknowledged in
his deposition, Horizon never left the warehouse and, though
the rental amount was reduced, never missed a single
payment.

On the second element, Plaintiff offers the argument
that these misrepresentations were not material because,
even with the correct information, Defendant would have had
to compensate Plaintiff, to some extent, for the reduction
in rent paid by Horizon.  Plaintiff points out that
Defendant gave Plaintiff a check for an underestimated loss of
the rental income with the intention of calculating the
exact amount later.  Plaintiff further contends that, even
using the correct, lower rental rate ($2000 not $4000),
given the amount of time that had passed without the floor
being repaired, Defendant would still have been on the hook
for the full $16,000 advanced to Plaintiff for lost business
income.

Plaintiff's argument is a good effort but does not

13

stand up.  Horizon's occupation of the premises as a tenant
and its true monthly rental obligation were clearly material
facts.  They bear directly on Plaintiff's claim for lost
business income.  Even if Plaintiff did not intend
ultimately to secure more than it was due under the policy,
the law is clear that the misrepresentations themselves were
material.  <u>Gechijian II</u>, 305 Mass. at 136.  The conclusion
that Plaintiff's misrepresentations were material is
unavoidable as a matter of law.  <u>See</u>  <u>Yerardi</u>, 436 F. Supp.
2d at 240.

    As noted above, Plaintiff's strongest argument focuses
on the issue of the Agent's intent in making the material
representations.  It is true that if a misrepresentation is
only an innocent or accidental mistake, then the contract
will not be void.  <u>Gechijian II</u>, 305 Mass. at 489; <u>Harold J.
Warren, Inc.</u>, 386 F.2d at 581.  Even where a
misrepresentation is made with reckless disregard for the
truth, Massachusetts courts will not impute actual deceit as
a matter of law.  <u>Boston Mut. Ins. Co.</u>, 165 F.3d at 96-7
(discussing a spectrum of scenarios where deceitful intent
may be demonstrated).  Because of this, as Plaintiff points
out, the question of intent to defraud usually requires an
assessment of inferences and credibility for the jury to

14

decide.  See Dadurian, 787 F.2d at 762; Yerardi, 436 F. Supp. 2d at 241.

The problem for Plaintiff here is that, even in the face of these authorities, the factual record before the court is so clear that summary judgment is compelled.  Under Massachusetts law "fraudulent intent may be shown by proof that a party knowingly made a false statement and that the subject of that statement was susceptible of actual knowledge."  Fisch, 437 Mass. at 139; Yerardi, 436 F. Supp. 2d at 240; cf. Harold J. Warren, Inc., 386 F.2d at 581.  The facts of record make it clear that the communications by the Agent to Defendant, known to Plaintiff, did not reflect merely "reckless" disregard for the truth but knowing falsehood.

First, Defendant was told by Plaintiff through its Agent that Horizon had left the warehouse and was no longer paying rent.  Both these representation were false, and both of these representations were "susceptible of actual knowledge."  See Fisch, 437 Mass. at 139.  This was not a question of valuing losses, of which reasonable minds might differ.  E.g., Gechijian II, 305 Mass. at 139.  Neither was it a question of credibility, where one witness was disputing another.  E.g., Dadurian, 787 F.2d at 762; Yerardi, 436 F. Supp. 2d at 240.  There is no dispute.

Plaintiff's owner, Mr. Daniele, testified under oath at his deposition that he knew Horizon had never vacated its tenancy and had never skipped a rental payment. (Dkt. No. 44, Ex. 1 at 183-84 & 185.) These were facts both capable of actual knowledge and actually known to Plaintiff, and they were misrepresented to Defendant. The misrepresentations certainly were not innocent slips, and they cannot be characterized as merely reckless. They were flat-out falsehoods.

Second, the false statements to Defendant were made repeatedly and over an extended period of time. On August 13, 2009, the Agent sent an email to Defendant regarding the lost rental income, in which Defendant was told that the loss of rental income amounted to "$4,150.00 per month until present as the tenant has left due to the loss." (Dkt. No. 44, Ex. 1 at 153.) This misrepresentation was repeated over three additional emails extending through a period of two weeks, as the Agent sought a resolution of Plaintiff's claim for lost business income under the policy. Moreover, these falsehoods were forwarded to Plaintiff's owner, Mr. Daniele, who admitted that he knew they were false.

In addition, in support of Plaintiff's claim, on August 24, 2009, the Agent sent Defendant copies of the original lease and lease modification that falsely depicted Horizon's

16

rental obligation as $4100 per month for the 2009 calendar
year.  It is undisputed that these documents were provided
to the Agent by Plaintiff's owner, with the knowledge that
they would be forwarded to Defendant.  (<u>Id.</u> at 180.)  As
noted above, what was <u>not</u> provided to Defendant, either by
the Agent or by Plaintiff, was Horizon's November 2008
letter terminating the lease four months prior to the pipe
repture and resulting water damage.

Finally, the evidence in the record shows that Horizon
had not paid more than $4000 per month on its lease since
May of 2008 -- a full ten months before the water damage.
(<u>Id.</u> at 219.)  In the three months preceding the water
damage, Horizon had paid $3000 per month in rent.  Horizon
did not drop its rental payments due to the water damage
until June 2009 and, even then continued paying $2000 per
month in rent.  Defendant was told that Plaintiff was
sustaining loss income amounts of $4100 per month since the
date of the water damage incident, when in fact Plaintiff
had <u>no</u> loss of business income for almost three full months
after the incident and then only a $1000 loss per month
starting in June.

No reasonable factfinder confronting this record could
conclude that this series of falsehoods constituted merely
an innocent misstatement or reckless communication.  The

17

First Circuit's decision in <u>Dadurian v. Underwriters at Lloyd's, London</u> does not assist Plaintiff.  787 F.2d 756 (1st Cir. 1986).  That case involved a straightforward issue of credibility.  No such issue can be found in the record now before the court.

As the SJC has stated,

> [a] valuation may be so exaggerated and excessive as to constitute a deliberate and wilful overvaluation; and its use to influence the judgment of another who was under an obligation to pay in accordance with actual value would necessarily imply an intent to deceive as the natural and proximate consequence of such conduct.

<u>Gechijian II</u>, 305 Mass. at 137.  The case falls squarely within the SJC's holding.

Insurance policies set forth the terms of the relationship between the company and the insured in which "they shall cooperate in complete honesty and fairness to ascertain the essential facts -- the facts of value and of loss -- in accord with the truth," because the insurance company is bound by the terms of the policy to pay the losses of the insured.  <u>Gechijian I</u>, 298 Mass. at 489; <u>Harold J. Warren, Inc.</u>, 386 F.2d at 580.  The policy does not contemplate a relationship wherein the parties haggle for best advantage: the insurer is bound to pay the loss and the insured is bound to report the loss honestly.  <u>Id.</u> Thus, where an insured intentionally misrepresents the loss

18

suffered, whether in pursuing a payment he is not entitled
to, trying to obtain a faster resolution of his claim, or
seeking an advantage in negotiations, the policy is void.

It is true that the First Circuit counsels caution in
"direct[ing] a verdict for the party having the burden of
proof." Dadurian, 787 F.2d at 762.  This factual scenario,
however, presents a relatively rare instance where
Defendant, who does bear the burden here, is entitled to
judgment as a matter of law.  The undisputed evidence
compels the court to conclude that Defendant has met its
burden in establishing that Plaintiff intentionally made
material misrepresentations in its claim for loss of
business income under the policy.  The policy is therefore
void.  Defendant is entitled to summary judgment.  See
Jenkins v. Aetna Life Ins. & Annuity Co., 1996 WL 617264, at
*5 (D. Mass. Aug. 14, 1996) (Saris, J.) (granting summary
judgment for the insurer after determining that the
"undisputed evidence [] demonstrates deceptive intent by the
insured").

IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for
Summary Judgment (Dkt. No. 43) is hereby ALLOWED.  This case
may now be closed.

It is So Ordered.

19

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge